UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JEFF W. HAITHCOTE, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | NO. 3:18-cv-00122 |
| TDOC DEPUTY COMMISSIONER WOODARD, et al., | ) ) ) ) | CHIEF JUDGE CRENSHAW |
| Defendants. | ) ) |  |

**MEMORANDUM OPINION**

Jeff W. Haithcote, a state inmate confined at the Lois M. DeBerry Special Needs Facility in Nashville, Tennessee, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1.) Plaintiff has also filed an application to proceed *in forma pauperis* (Doc. No. 2) and a motion to appoint counsel (Doc. No. 3).

**I.     Application to Proceed as a Pauper**

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application that he lacks sufficient financial resources from which to pay the full filing fee in advance, Plaintiff's application (Doc. No. 2) will be granted. Plaintiff nonetheless remains responsible for paying the full filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff will therefore be assessed the full $350.00 filing fee, to be paid as directed in the accompanying Order.

**II.    Initial Review**

The Court is required to conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must construe a *pro se* plaintiff's complaint liberally, United States v. Smotherman, 838 F.3d 736 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)).

### A.   Factual Allegations

On December 13 and 14, 2016, while confined at the Bedford County Jail ("BCJ") in Shelbyville, Tennessee, Plaintiff was referred to Moccasin Bend Mental Health Institute ("MBMHI") in Chattanooga, Tennessee. (Doc. No. 1 at 13.) MBMHI staff prescribed Plaintiff Zoloft and diagnosed him with a drug disorder, anti-social disorder, depression disorder, and suicidal ideation. (Id.) Bedford County Sheriff Austin Swing, BCJ Administrator Mary West, and BCJ Captain of Operations Tim Lokey were allegedly aware of Plaintiff's visit to MBMHI. (Id.)

In early 2017, Plaintiff filled out a sick call request at BCJ stating that he was still experiencing serious depression and needed his medication adjusted. (Id. at 14.) Plaintiff told a nurse he was having suicidal thoughts, and the nurse made an appointment for Plaintiff to see a doctor the next day. (Id.) Plaintiff returned to general population in contravention of policy requiring him to be placed in observatory isolation. (Id.) Plaintiff did not see a doctor the next day, and BCJ Nurse Becky later informed him that a doctor visit was unnecessary because she had doubled his medication. (Id.)

On January 18, 2017, Plaintiff had an adverse reaction to his medication in the form of an "anxiety attack of sorts." (Id.) After Plaintiff overcame the adverse reaction, another BCJ inmate tackled Plaintiff. (Id. at 10, 14.) Plaintiff did not provoke the attack. (Id.)

Following the attack, Plaintiff laid on the ground and told BCJ Correctional Officers Jordon, Cooper, and Crow "at least 3 times" that the attack had broken his hip. (Id. at 10.) Jordon, Cooper, and Crow nonetheless placed Plaintiff in handcuffs, forced him to walk "approximately 70-75 feet" to the booking area, and strapped him into a restraint chair. (Id.) Plaintiff alleges that he "felt [his leg] completely break right before" being strapped into the restraint chair. (Id. at 10-11.) Plaintiff was then taken to Bedford County Hospital, where Plaintiff received x-ray scans that reflected his "upper right femur bone was completely broken." (Id. at 11.) Plaintiff has not moved without the aid of a wheelchair or walker since the attack. (Id. at 12, 17.)

On the evening of January 19, 2017, Dr. Peterson performed surgery on Plaintiff at Bedford County Hospital, inserting an "8 to 10 inch rod" in Plaintiff's upper right leg. (Id. at 11.) Dr. Peterson did not treat Plaintiff's "busted right knee." (Id.) On January 22, 2017, Plaintiff returned to the Bedford County Jail and informed BCJ security and medical staff that he was experiencing "extreme pain," bruising, and swelling in his right knee. (Id.) The condition of Plaintiff's right knee worsened overnight. (Id.) Another inmate helped Plaintiff prepare sick call requests, grievances, and requests for "furlough status" in an effort to get Plaintiff medical attention. (Id.) Plaintiff sent these requests to Sheriff Swing, BCJ Administrator West, and BCJ Captain of Operations Lokey. (Id.) Lokey denied these requests. (Id.)

At some point after Lokey denied the requests, Plaintiff received an x-ray scan of his right knee. (Id.) Plaintiff did not receive any further treatment at Bedford County Jail, and he was transferred to DeBerry Special Needs Facility ("DSNF") on safekeeping status within the following week. (Id.)

From February 2, 2017 to March 2, 2017, Plaintiff "complained about" his right knee at DSNF. (Id.) On March 2, 2017, Plaintiff attended a scheduled visit to receive an x-ray scan of his

3

right upper femur. (Id.) An x-ray technician named Wayne felt "pieces of broken bone protruding from the back and side," and then took an x-ray scan of Plaintiff's right knee. (Id.) DSNF medical staff prescribed Plaintiff a wheelchair, walker, and ibuprofen. (Id. at 12, 17.) Dr. Nwozo, a bone specialist, reviewed Plaintiff's x-ray and recommended Plaintiff undergo surgery to remove bone fragments around his knee, as well as knee replacement surgery. (Id. at 12, 19.) Dr. Nwozo's recommendation was addressed to Dr. Baker, a consulting physician. (Id. at 15, 19.)

On April 4, 2017, Dr. Nwozo and his assistant came to Plaintiff's cell and informed him that "their insurance would not cover [his] surgery because it was not life threatening." (Id. at 12.) Plaintiff has requested that DSNF medical staff provide him the surgery prescribed by Dr. Nwozo or transfer him back to the Bedford County Jail. (Id.) Attached to Plaintiff's complaint is a grievance making this request that is dated April 5, 2017. (Id. at 23–24.) DSNF Warden Holloway and Tennessee Department of Correction ("TDOC") Deputy Commissioner Woodard denied this grievance. (Id. at 12, 21–22.) "The board" agreed that Plaintiff should take ibuprofen rather than undergo surgery, despite that fact that Plaintiff has been allergic to non-steroidal anti-inflammatory drugs such as ibuprofen for "most of [his] adult life." (Id. at 16.) Plaintiff has also "complained and filled out sick call requests continually" about his knee since April 4, 2017. (Id. at 12.)

On November 30, 2017, Plaintiff received another x-ray scan of his right knee. (Id. at 12, 17.) As of December 4, 2017, Plaintiff was still unable to move without a wheelchair or walker and was in "extreme pain." (Id. at 17.) Plaintiff cannot focus on "preparing a defense." (Id.)

**B.     Standard of Review**

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470–

4

71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006)).

#### 1. Defendants in the Middle District of Tennessee

Plaintiff names thirteen defendants in this action. Three of the defendants—TDOC Deputy Commissioner Woodard, DSNF Warden Holloway, and DSNF medical provider Dr. Baker—reside in the Middle District of Tennessee.

Plaintiff alleges that Woodard and Holloway are liable for his transfer from Bedford County Jail to DeBerry Special Needs Facility on safekeeping status without due process. (Doc. No. 1 at 18.) The Due Process Clause, however, does not include a "liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221–22

(2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). Plaintiff also alleges that Woodard and Holloway denied his grievance requesting that he receive surgery for his right knee or be transferred back to Bedford County Jail (Doc. No. 1 at 4, 12, 16), but § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. See Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has not alleged that Woodard or Holloway "directly participated, encouraged, authorized or acquiesced" in alleged inadequate medical treatment at DSNF. Id. Accordingly, Plaintiff fails to state a claim against Woodard and Holloway, and these defendants will be dismissed.

Plaintiff alleges that Dr. Baker was deliberately indifferent to his serious medical needs by denying surgery that was recommended by Dr. Nwozo. "As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." Darrah v. Krisher, 865 F.3d 361, 372 (6th Cir. 2017) (citing Estelle, 429 U.S. at 107). "Additionally, '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" Id. (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Accordingly, Plaintiff's claim against Dr. Baker will be dismissed. This dismissal is without prejudice to any state law claims asserted against Dr. Baker in the complaint, but the Court makes no findings regarding any applicable statute of limitations of such state law claims.

### 2. Transfer to the Eastern District of Tennessee

Under 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time that the action is commenced, if there is no district in which the action may otherwise be brought.

While the defendants named in this action reside in the Middle and Eastern Districts of Tennessee, the remaining ten defendants reside only in the Eastern District. The alleged attack and resulting injuries that form the basis of this action occurred while Plaintiff was confined at the Bedford County Jail in Shelbyville, Tennessee. Thus, witnesses and records related to the alleged attack are located in Bedford County. Bedford County is a part of the Winchester Division of the Eastern District of Tennessee. 28 U.S.C. § 123(a)(4). While venue is not improper in the Middle District, the convenience of the parties and the interests of justice would be served by transferring this action to the Eastern District. 28 U.S.C. § 1404(a).

### III. Conclusion

For these reasons, Plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) will be granted. Plaintiff's claims against TDOC Deputy Commissioner Woodard, DSNF Warden Holloway, and Dr. Baker will be dismissed. In accordance with the accompanying Order, this action will be transferred to the United States District Court of the Eastern District of Tennessee, Winchester Division at Winchester, Tennessee, for consideration of Plaintiff's claims against the remaining defendants.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE