# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | | |
|---|---|---|
| JEFF W. HAITHCOTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 4:18-cv-00019 |
| | ) | REEVES/STEGER |
| DOCTOR PETERSON, AUSTIN SWING, MARY WEST, TIM LOKEY, NURSE BECKY, OFFICER JORDAN, OFFICER CROW, OFFICER COOPER, LEE RUSSELL, and MICHAEL RONDLES, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

This is a pro se prisoner's complaint for violation of 42 U.S.C. 1983 that the United States District Court for the Middle District of Tennessee transferred to this Court after granting Plaintiff leave to proceed *in forma pauperis*, assessing the filing fee, and dismissing several Defendants based on its initial screening of the complaint [Docs. 5 and 6]. Now before the Court is Plaintiff's motion for reconsideration of the transferring court's order dismissing those Defendants [Doc. 9]. For the reasons set forth below, this motion will be **DENIED**. Also, all Defendants except Officers Jordan, Crow, and Cooper will be **DISMISSED**.

### I. MOTION FOR RECONSIDERATION

In his motion for reconsideration [Doc. 9] Plaintiff requests that the Court reconsider the transferring court's decision to dismiss Defendants Woodard and Holloway. As Plaintiff filed this motion within twenty-eight days after the transferring court entered its order, the Court construes this filing as a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See Williams v. Thaler*, 602 F.3d 291, 303–4 (5th Cir. 2010) (providing that "[w]hen a

litigant files a motion seeking a change in judgment, courts typically determine the appropriate motion based on whether the litigant filed the motion within Rule 59(e)'s time limit."). "A district court may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). It is improper, however, for a party to use such a motion "to relitigate old matters, or to raise arguments or present evidence that could have been raised [earlier]." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (citation omitted). Moreover, a district court should grant such relief sparingly. *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014).

In its memorandum opinion explaining its decision to dismiss Defendants Woodard, Holloway, and Baker, the transferring court stated as follows:

> Plaintiff alleges that Woodard and Holloway are liable for his transfer from Bedford County Jail to DeBerry Special Needs Facility on safekeeping status without due process. (Doc. No. 1 at 18.) The Due Process Clause, however, does not include a "liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Plaintiff also alleges that Woodard and Holloway denied his grievance requesting that he receive surgery for his right knee or be transferred back to Bedford County Jail (Doc. No. 1 at 4, 12, 16), but § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has not alleged that Woodard or Holloway "directly participated, encouraged, authorized or acquiesced" in alleged inadequate medical treatment at DSNF. *Id.* Accordingly, Plaintiff fails to state a claim against Woodard and Holloway, and these defendants will be dismissed.

> Plaintiff alleges that Dr. Baker was deliberately indifferent to his serious medical needs by denying surgery that was recommended by Dr. Nwozo. "As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citing *Estelle*, 429 U.S. at 107). "Additionally, '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Accordingly, Plaintiff's claim against Dr. Baker will be dismissed. This dismissal is without prejudice to any state law claims asserted against Dr. Baker in the complaint, but the Court makes no findings regarding any applicable statute of limitations of such state law claims.

[Doc. 5 p. 5–6].

In his motion for reconsideration, Plaintiff asserts that Defendants Woodard and Holloway are responsible for the "intake, keep, and care" of all prisoners at the Tennessee Department of Corrections' ("TDOC") Deberry Special Needs Facility and held him there as a pretrial detainee under maximum security policies [Doc. 9 p. 1]. Plaintiff also alleges that these Defendants violated his Sixth Amendment rights to counsel and access to courts and his rights under the Eighth Amendment, citing pages 45–60 of his complaint [*Id.* at 1–3]. Plaintiff further asks that the Court "shed light on his understanding of [relevant court] rulings on the safekeeping of pretrial detainees" [*Id.* at 2]. Plaintiff does not request that the Court reconsider the transferring court's decision to dismiss Defendant Dr. Baker or any claims against Defendants Woodard and Holloway based on denial of grievances or knowledge of medical issues.

First, Plaintiff's allegations in his motion for reconsideration regarding Defendants Woodard and Holloway's involvement in the "intake, keep, and care" of prisoners at Deberry and/or the alleged violations of his Sixth and Eighth Amendment rights are not set forth in Plaintiff's complaint, nor are they based upon newly discovered evidence such that Plaintiff could

not have included them in his complaint. Thus, it appears that Plaintiff seeks to raise arguments and/or present claims in his Rule 59(e) motion that he could have raised in his complaint, but did not, which is improper. *Exxon*, 554 U.S. at 486 n.5.

Further, it is apparent that Plaintiff was placed in TDOC custody on safekeeping status pursuant to a court order obtained at least in part by the filing of an affidavit from the Sheriff of Bedford County asserting that Plaintiff had attempted suicide, was threatening guards, and had previously escaped from Bedford County jail, and that Bedford County could not properly house Plaintiff or keep him safe [Doc. 1 p. 55–58]. The transferring court correctly held that this placement did not violate Plaintiff's constitutional rights. *Williams v. Lindamood*, 526 F. App'x 559, 563 (6th Cir. 2013) (holding that "*initial* placement in administrative segregation does not amount to an 'atypical and significant' hardship, in which an inmate has a protected interest") (citation omitted)).[1]

Moreover, to the extent that Plaintiff seeks to hold Defendants Woodard and Holloway liable for his allegation in a grievance filed with the complaint that he remained at Deberry despite being medically cleared [*Id.* at 46], nothing in the complaint allows the Court to plausibly infer that Defendant Holloway or Woodard was personally involved in this decision.[2] *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Shehee v.*

---

[1] To the extent Plaintiff asserts that this move violated a state statute, that is insufficient to hold these Defendants liable under § 1983. *Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) (stating that "[i]t has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983").

[2] To the contrary, according the documents Plaintiff filed with his complaint that are a part thereof for "all purposes," Fed. R. Civ. P. 10(c), Plaintiff's medical providers made the decision to keep Plaintiff at Deberry [*Id.* at 49].

*Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983).

Also, Plaintiff states in his motion that he seeks to hold Defendants Woodard and Holloway liable for violations of his Sixth Amendment rights of access to courts and counsel, presumably based upon the allegations in a grievance he filed with his complaint in which he complains of limited access to a phone and a law library and his inability to obtain visits from potential witnesses at Deberry [Doc. 1 p. 46–47]. In the grievance, Plaintiff specifically asserted that he could only make one thirty-minute phone call per week and call forty authorized numbers quarterly and that this policy "impedes[d] severely on one[']s right to make bail" in violation of the Sixth and/or Eighth Amendment [*Id.* at 46]. He also complained that he could not "adequately research and prepare a defense" because he had to use request forms to obtain legal materials but did not always get the requested materials [*Id.*].

Nothing in the complaint, however, allows the Court to plausibly infer that Defendant Holloway or Woodard was personally involved in any alleged violations of Plaintiff's Sixth[3] or Eighth Amendment rights. Accordingly, Plaintiff has not established that he is entitled to relief under Rule 59(e) and Plaintiff's motion for reconsideration [Doc. 9] will be **DENIED**.

---

[3] Further, nothing in the complaint allows the Court to plausibly infer that any violation of Plaintiff's Sixth Amendment rights occurred. Nothing suggests that Plaintiff was unable to contact counsel and others through other means, such as mail, while at Deberry, or that any alleged denial of access to courts or counsel prejudiced Plaintiff's meritorious legal action as required to plead a claim for denial of access to courts. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of access to the courts to state such a claim).

## II. SCREENING REMAINING CLAIMS

As the transferring court noted in its order screening Plaintiff's complaint, under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune [Doc. 5 p. 4–5, 1–2]. While the transferring court dismissed the Middle District Defendants based on its screening of the complaint as set forth above [Docs. 5 and 6], it did not screen Plaintiff's other claims. Accordingly, applying the same legal standard the transferring court applied in its memorandum opinion [Doc. 5 p. 4–5, 1–2], the Court will now screen the remainder of Plaintiff's complaint.

### A. Complaint Allegations

The transferring court accurately summarized the factual allegations of Plaintiff's complaint as follows:

> On December 13 and 14, 2016, while confined at the Bedford County Jail ("BCJ") in Shelbyville, Tennessee, Plaintiff was referred to Moccasin Bend Mental Health Institute ("MBMHI") in Chattanooga, Tennessee. (Doc. No. 1 at 13.) MBMHI staff prescribed Plaintiff Zoloft and diagnosed him with a drug disorder, anti-social disorder, depression disorder, and suicidal ideation. (Id.) Bedford County Sheriff Austin Swing, BCJ Administrator Mary West, and BCJ Captain of Operations Tim Lokey were allegedly aware of Plaintiff's visit to MBMHI. (Id.)
>
> In early 2017, Plaintiff filled out a sick call request at BCJ stating that he was still experiencing serious depression and needed his medication adjusted. (Id. at 14.) Plaintiff told a nurse he was having suicidal thoughts, and the nurse made an appointment for Plaintiff to see a doctor the next day. (Id.) Plaintiff returned to general population in contravention of policy requiring him to be placed in observatory isolation. (Id.) Plaintiff did not see a doctor the next day, and BCJ Nurse Becky later informed him that a doctor visit was unnecessary because she had doubled his medication. (Id.)

On January 18, 2017, Plaintiff had an adverse reaction to his medication in the form of an "anxiety attack of sorts." (Id.) After Plaintiff overcame the adverse reaction, another BCJ inmate tackled Plaintiff. (Id. at 10, 14.) Plaintiff did not provoke the attack. (Id.)

Following the attack, Plaintiff laid on the ground and told BCJ Correctional Officers Jordon, Cooper, and Crow "at least 3 times" that the attack had broken his hip. (Id. at 10.) Jordon, Cooper, and Crow nonetheless placed Plaintiff in handcuffs, forced him to walk "approximately 70-75 feet" to the booking area, and strapped him into a restraint chair. (Id.) Plaintiff alleges that he "felt [his leg] completely break right before" being strapped into the restraint chair. (Id. at 10-11.) Plaintiff was then taken to Bedford County Hospital, where Plaintiff received x-ray scans that reflected his "upper right femur bone was completely broken." (Id. at 11.) Plaintiff has not moved without the aid of a wheelchair or walker since the attack. (Id. at 12, 17.)

On the evening of January 19, 2017, Dr. Peterson performed surgery on Plaintiff at Bedford County Hospital, inserting an "8 to 10 inch rod" in Plaintiff's upper right leg. (Id. at 11.) Dr. Peterson did not treat Plaintiff's "busted right knee." (Id.) On January 22, 2017, Plaintiff returned to the Bedford County Jail and informed BCJ security and medical staff that he was experiencing "extreme pain," bruising, and swelling in his right knee. (Id.) The condition of Plaintiff's right knee worsened overnight. (Id.) Another inmate helped Plaintiff prepare sick call requests, grievances, and requests for "furlough status" in an effort to get Plaintiff medical attention. (Id.) Plaintiff sent these requests to Sheriff Swing, BCJ Administrator West, and BCJ Captain of Operations Lokey. (Id.) Lokey denied these requests. (Id.)

At some point after Lokey denied the requests, Plaintiff received an x-ray scan of his right knee. (Id.) Plaintiff did not receive any further treatment at Bedford County Jail, and he was transferred to DeBerry Special Needs Facility ("DSNF") on safekeeping status within the following week. (Id.)

From February 2, 2017 to March 2, 2017, Plaintiff "complained about" his right knee at DSNF. (Id.) On March 2, 2017, Plaintiff attended a scheduled visit to receive an x-ray scan of his right upper femur. (Id.) An x-ray technician named Wayne felt "pieces of broken bone protruding from the back and side," and then took an x-ray scan of Plaintiff's right knee. (Id.) DSNF medical staff prescribed Plaintiff a wheelchair, walker, and ibuprofen. (Id. at 12, 17.) Dr. Nwozo, a bone specialist, reviewed Plaintiff's x-ray and

recommended Plaintiff undergo surgery to remove bone fragments around his knee, as well as knee replacement surgery. (Id. at 12, 19.) Dr. Nwozo's recommendation was addressed to Dr. Baker, a consulting physician. (Id. at 15, 19.)

On April 4, 2017, Dr. Nwozo and his assistant came to Plaintiff's cell and informed him that "their insurance would not cover [his] surgery because it was not life threatening." (Id. at 12.) Plaintiff has requested that DSNF medical staff provide him the surgery prescribed by Dr. Nwozo or transfer him back to the Bedford County Jail. (Id.) Attached to Plaintiff's complaint is a grievance making this request that is dated April 5, 2017. (Id. at 23–24.) DSNF Warden Holloway and Tennessee Department of Correction ("TDOC") Deputy Commissioner Woodard denied this grievance. (Id. at 12, 21–22.) "The board" agreed that Plaintiff should take ibuprofen rather than undergo surgery, despite that fact that Plaintiff has been allergic to non-steroidal anti-inflammatory drugs such as ibuprofen for "most of [his] adult life." (Id. at 16.) Plaintiff has also "complained and filled out sick call requests continually" about his knee since April 4, 2017. (Id. at 12.)

On November 30, 2017, Plaintiff received another x-ray scan of his right knee. (Id. at 12, 17.) As of December 4, 2017, Plaintiff was still unable to move without a wheelchair or walker and was in "extreme pain." (Id. at 17.) Plaintiff cannot focus on "preparing a defense." (Id.)

[Doc. 5 p. 2–4].

### B. Nurse Becky and Dr. Peterson

As set forth above, Plaintiff's allegations as to Defendant Nurse Becky are that in early 2017, after he complained that he was still experiencing serious depression and suicidal thoughts and needed his medication adjusted, she doubled his medication and told him that a doctor visit was unnecessary [Doc. 1 p. 14]. On January 18, 2017, however, he had an adverse reaction to his medication in the form of "anxiety attack of sorts," after which an inmate assaulted him [*Id.*]. As to Defendant Dr. Peterson, Plaintiff alleges that he performed surgery on Plaintiff's upper right leg at the Bedford County Hospital after the attack on him but did not treat his "busted right knee" [*Id.* at 11]. Plaintiff specifically alleges that a factfinder could conclude that a doctor, presumably Dr.

Peterson, knew or should have known from the fact that his upper leg was broken that there was an obvious risk that his knee was also injured [*Id.* at 16].

A prison authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). The subjective component of a claim for denial of medical care requires proof that the prison official acted with deliberate indifference. *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009). Deliberate indifference requires a mental state amounting to criminal recklessness, and mere negligence is insufficient. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839–40). To meet this subjective standard, a plaintiff must establish that the defendant: (1) "perceived the facts from which to infer substantial risk to the prisoner;" (2) "did in fact draw the inference;" and (3) "then disregarded that risk." *Id.* at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Also, as the transferring court noted:

> "As a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citing *Estelle*, 429 U.S. at 107). "Additionally, '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

[Doc. 5 p. 6].

It is apparent that Plaintiff's claim(s) against Nurse Becky arise out of his disagreement with Nurse Becky's decisions as to his medical care. Further, nothing in the complaint allows the Court to plausibly infer that Nurse Becky was deliberately indifferent to Plaintiff's serious medical needs. Also, the mere existence of a break to Plaintiff's upper leg does not allow the Court to plausibly infer that Defendant Dr. Peterson drew the inference that Plaintiff's knee was also injured, and Plaintiff sets forth no other facts from which the Court can plausibly infer that Defendant Dr. Peterson drew such an inference.

Accordingly, the complaint fails to state a claim upon which relief may granted under § 1983 as to Defendants Nurse Becky and Dr. Peterson.

### C. Sick Call Requests, Grievances, and Requests for Furlough

As set forth above, Plaintiff also alleges that in the two days after his upper right leg surgery when he returned to Bedford County, he sent sick call requests, grievances, and furlough requests to medical staff and Defendants Sheriff Swing, Jail Administrator West, and Captain of Jail Administrations Lokey regarding his knee, but Defendant Lokey denied them [*Id.* at 11]. Plaintiff also alleges that these Defendants had knowledge of his 2016 mental health issues and treatment prior the inmate attacking him [*Id.* at 13].

First, to the extent that Plaintiff seeks to hold these Defendants liable for the attack on him due to their knowledge of his prior mental health issues and treatment, nothing in the complaint allows the Court to plausibly infer that any of these Defendants were deliberately indifferent "to a substantial risk of serious harm" to Plaintiff based on this knowledge as required to state such a claim. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

Further, nothing in the complaint allows the Court to plausibly infer that Defendants Swing, West, and Lokey were medical providers charged with responding to inmate sick call requests by providing medical care, and "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Additionally, any decision to deny Plaintiff's request for a medical furlough by these Defendants does not allow the Court to plausibly infer that they denied Plaintiff medical care in violation of the Eighth Amendment or otherwise violated Plaintiff's constitutional rights. Rather, any such decision would be an administrative matter into which this Court would not intrude. *Glover v. Johnson*, 855 F.2d 277 (6th Cir. 1988) (setting forth public policy concerns relating to court intrusion into jail administration matters and holding that courts should not "attempt to administer any portion of a state correctional system program except in the most compelling situations").

As such, the complaint fails to state a claim under § 1983 as to Defendants Swing, West, and Lokey based on Plaintiff's allegations that they knew of his mental health issues and treatment and that he sent them medical care requests, grievances, and requests for furlough regarding his knee injury.

### D. Transfer to TDOC on Safekeeping Status

In addition to the claims against Defendants Holloway, Woodard, and Baker regarding Plaintiff's transfer and stay at Deberry addressed above and in the transferring court's memorandum opinion, it is apparent that Plaintiff seeks to hold Defendants Swing, Russell, and Rondles liable under § 1983 based on their involvement in his transfer from Bedford County to TDOC on safekeeping status [*Id.* at 18, 55–58].

Specifically, while Plaintiff did not set forth any factual allegations regarding these Defendants and/or this claim in his complaint, it is apparent from the documents Plaintiff filed therewith that Defendant Russell was the judge who entered the order approving Bedford County's request to transfer Plaintiff to TDOC for safekeeping based at least in part on the affidavit from Defendant Swing, and that Defendant Rondles was the Assistant District Attorney who approved that order for entry [*Id.* at 55–58]. It is also apparent that while he was incarcerated in Deberry, Plaintiff filed a grievance alleging that this transfer violated his right to due process, asking whether the transfer had been motivated by discrimination in violation of his right to equal protection, and alleging that his Sixth and Eighth Amendment rights had been violated at Deberry [*Id.* at 45–48].

As set forth above, however, initial placement in maximum security does not state a claim for violation of the Due Process clause. *Williams v. Lindamood*, 526 F. App'x 559, 563 (6th Cir. 2013) (holding that "*initial* placement in administrative segregation does not amount to an 'atypical and significant' hardship, in which an inmate has a protected interest"). Moreover, even if the Court accepts as true Plaintiff's allegation that this transfer violated a state statute, that is insufficient to support a claim under § 1983. *Stanley v. Vining*, 602 F. 3d 767, 769 (6th Cir. 2010) (stating that "[i]t has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983"). Further, Plaintiff's speculative statements regarding violation of his equal protection rights [Doc. 1 p. 47] are not sufficient to state a claim for relief under § 1983 as to Defendants Russell, Rondles, or Swing.

Accordingly, Plaintiff's claims against Defendants Russell, Rondles, and Swing arising out Plaintiff's transfer from Bedford County to TDOC custody are not cognizable under § 1983 and they will be **DISMISSED**.

### E. State Law Claims

Plaintiff also states that he seeks to hold unspecified Defendants liable for claims of negligence and/or medical malpractice [*Id.* at 9]. Section 1983 does not provide redress for a violation of a state law, however. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Further, the only federal claim proceeding in this action after the Court's dismissal of the majority of Plaintiff's claims set forth above is Plaintiff's claim that after he was assaulted by another inmate, Defendants Cooper, Jordan, and Crow forced Plaintiff to walk despite Plaintiff repeatedly informing them that his hip was broken [*Id.* at 10]. To the extent that Plaintiff's complaint presents state law claims for relief against other Defendants, this Court declines to exercise jurisdiction over such claims, as they do not share common facts with and would predominate over the remaining federal claim. 28 U.S.C. § 1367(c). As such, these claims will be dismissed without prejudice.

### IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for reconsideration [Doc. 9] is **DENIED**;

2. All federal claims except Plaintiff's claim that after he was assaulted by another inmate, Defendants Cooper, Jordan, and Crow forced Plaintiff to walk despite Plaintiff repeatedly informing them that his hip was broken are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted under § 1983;

3. All state law claims are **DISMISSED without prejudice**;

4. All Defendants except Officers Cooper, Jordan, and Crow are **DISMISSED**;

5. The Clerk is hereby **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendants Cooper, Jordan, and Crow;

6. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within thirty (30) days of entry of this memorandum and order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

7. Plaintiff is **NOTIFIED** that failure to return the completed service packets within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

8. Defendants shall answer or otherwise respond to the complaint and within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default; and

9. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**